**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **DEMETRIA PEART,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )  **Civil Action No. 13-537 (RMC)** |
|  | ) |
| **LATHAM & WATKINS LLP,** | ) |
|  | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM OPINION

Demetria Peart sues her former employer, Latham & Watkins LLP, alleging two federal causes of action, discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. She also alleges several state-law claims. Latham & Watkins moves to dismiss on various grounds, including lack of subject matter jurisdiction, untimeliness, and failure to state a claim. The motion will be granted in part for the reasons explained below.

## I. FACTS

According to the Amended Complaint, Latham & Watkins LLP (Latham) hired Demetria Peart, an African American woman, as a legal secretary in April 2007. Six months later, Ms. Peart learned that she was pregnant and notified her secretarial supervisor. She continued to work until serious medical complications relating to her pregnancy forced her in November 2007 to go on doctor-mandated bed rest. Ms. Peart subsequently sought, and received, short-term disability payments. Am. Compl. [Dkt. 11] ¶¶ 1, 3, 4, 9; Mot. to Dismiss [Dkt. 14] at 3.

Ms. Peart asserts that Latham terminated her on January 24, 2008. She claims that Christopher Carr, Latham's human resources manager, informed her on January 24 via a

telephone call that she was fired from the firm because "she was no longer needed," adding that "her pregnancy complications were not his problem." Am. Compl. ¶ 10. Ms. Peart later learned that Mr. Carr had told other Latham personnel that she had been terminated because of "damn thirteen weeks [of] morning sickness" and that her pregnancy was "not [their] concern." *Id.* ¶ 11.

In early 2008, Ms. Peart filed a charge with the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, alleging discrimination based on gender and pregnancy. Pursuant to a "work-sharing agreement" between EEOC and the D.C. Office of Human Rights (OHR), Ms. Peart's case was "transferred" to OHR on July 14, 2008. Def.'s Mot. Judicial Notice [Dkt. 15], Ex. 1 (Mar. 18, 2011 OHR Letter) [Dkt. 15-2] at 1 n.1. OHR then issued a finding on March 18, 2011, that there was "NO PROBABLE CAUSE [sic] to believe that [Latham] subjected [Ms. Peart] to disparate treatment based on sex (female/pregnant) when she was allegedly terminated from her position as Legal Secretary while out of work on doctor-mandated bed rest." *Id.* at 9. Ms. Peart subsequently asked OHR to reconsider its decision. After Latham failed to oppose Ms. Peart's reconsideration request, OHR issued a decision on September 6, 2011, reversing its initial "no probable cause" determination and ordering a hearing before the D.C. Human Rights Commission. *Id.*, Ex. 2 (Sept. 6, 2011 OHR Letter) [Dkt. 15-3] at 3. This decision, however, was deemed void following the revelation that Latham had not received notice of the reconsideration due to "clerical errors." *Id.*, Ex. 3 (Mar. 29, 2012 OHR Letter) [Dkt. 15-4] at 2. OHR reviewed Latham's opposition to Ms. Peart's reconsideration request and issued a new decision on March 29, 2012. It found that because Ms. Peart was delinquent in responding to Latham's requests for information regarding her ability to return to work, there was "no evidence

demonstrating that [Latham's] actions were pretext for discrimination." *Id.* at 6. OHR affirmed its "no probable cause" finding, and informed Ms. Peart that the March 29 letter was a final decision from which she had three years to seek judicial review in D.C. Superior Court. *Id.* at 6-7.

For reasons unexplained in the record, more than five years after her termination, EEOC finally issued a "Right to Sue" letter to Ms. Peart on April 18, 2013. *See id.*, Ex. 4 (Apr. 18, 2013 EEOC Right to Sue Letter) [Dkt. 15-5]. Ms. Peart filed her original Complaint in this matter four days later. *See* Compl. [Dkt. 1]. Latham moved to dismiss the Complaint, *see* Mot. to Dismiss [Dkt. 8], and Ms. Peart filed an Amended Complaint on June 1, 2013. *See* Am. Compl.

The Amended Complaint contains five counts: violation of Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), (Count I); violation of 42 U.S.C. § 1981 (Count II); breach of an implied contract and wrongful discharge (Count III); intentional infliction of emotional distress (Count IV); and violation of the D.C. Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 *et seq.* (Count V). On June 20, 2013, Latham again moved to dismiss and requested judicial notice of certain documentation. *See* Mot to Dismiss; Def.'s Mot. Judicial Notice. Ms. Peart opposes the motion to dismiss, is silent as to Latham's request for judicial notice, and asks the Court to take judicial notice of an affidavit from a former Latham employee. *See* Opp'n [Dkt. 16].

## II. LEGAL STANDARDS

Latham's Motion to Dismiss requires the Court to resolve three issues. One is jurisdictional. Counts I and II are federal law claims and Counts III, IV, and V are state law claims. Accordingly, the Court must determine whether it should exercise supplemental jurisdiction over the state causes of action. The other two issues concern the propriety of

dismissing a complaint under Federal Rules of Civil Procedure (FRCP) 12(b)(1) and 12(b)(6). Specifically, Latham has moved to dismiss the claims alleged in the Amended Complaint for lack of subject matter jurisdiction, failure to state a claim, and untimeliness.

## A. Jurisdiction

Federal district courts have original jurisdiction over civil actions arising under federal statutes. 28 U.S.C. § 1331. In certain circumstances, § 1331 may also provide a federal court with an independent basis for exercising jurisdiction over related state-law claims. *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996). To determine when the assertion of supplemental jurisdiction is appropriate, the district court applies a two-part test. *Id.* (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

> First, the district court must determine whether the state and the federal claims derive from a common nucleus of operative fact; if they do, the court has the *power*, under Article III of the Constitution, to hear the state claim. Second, even if it concludes that it has that power, the district court must then decide whether to exercise its *discretion* to assert jurisdiction over the state issue.

*Id.* (internal citations and quotations omitted). In deciding whether to assert supplemental jurisdiction over a state-law claim, the court should consider whether judicial economy, convenience and fairness to litigants weigh in favor of doing so. A court may decline to exercise supplemental jurisdiction, however, if the state claim raises a novel or complex issue of state law, substantially predominates over the federal claims, or remains after the court has dismissed the federal claims. *Id.* at 921 (citing the supplemental jurisdiction statute, 28 U.S.C. § 1367). If a federal court invokes its supplemental jurisdiction over the state-law claim, then it "is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).

### B. Lack of Subject Matter Jurisdiction

Latham moves to dismiss Count V under FRCP 12(b)(1) for lack of subject-matter jurisdiction. When considering such a motion, a court reviews the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nonetheless, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)).

### C. Failure to State a Claim

Latham's motion to dismiss Counts I, II, III, and IV under FRCP 12(b)(6) challenges the adequacy of the Amended Complaint allegations on their face. Such a motion tests whether a plaintiff has properly stated a claim. FRCP 8(a), on which Latham relies, requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). A complaint must be sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level . . . ." *Id.* Rule 8(a) thus requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id.* at 570. When the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

FRCP 12(b)(6) also is the vehicle for asserting the affirmative defense of statutory time limitation. As this Circuit has held, "an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Before granting such a motion, however, the district court must ensure that the face of the complaint conclusively shows the claim is time-barred. *Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 425 (D.D.C. 2010) (citing *Smith-Haynie*, 155 F.3d at 578). This is

"because statute of limitations issues often depend on contested questions of fact." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). As a result, dismissal of a claim on statute of limitations grounds should be reserved for cases in which "'no reasonable person could disagree on the date' on which the cause of action accrued." *Lewis v. Bayh*, 577 F. Supp. 2d 47, 51 (D.D.C. 2008) (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998)); *see also Turner v. Afro-Am. Newspaper Co.*, 572 F. Supp. 2d 71, 72 (D.D.C. 2008) ("A court should grant a pre-discovery motion to dismiss on limitations grounds 'only if the complaint on its face is conclusively time-barred,' and the parties do not dispute when the limitations period began." (quoting *DePippo v. Chertoff*, 456 F. Supp. 2d 30, 33 (D.D.C. 2006)).

## III. ANALYSIS

Before delving into Latham's Motion to Dismiss, the Court will address two preliminary issues. First, the Court will analyze the bases for its exercise of original and supplemental jurisdiction over the federal-law and state-law claims. Second, the Court will address the parties' respective requests for judicial notice. Finding jurisdiction exists over the federal and state claims, the Court then will consider whether any of the counts alleged in the Amended Complaint survive Latham's dismissal motion.

### A. Original and Supplemental Jurisdiction

The basis for this Court's exercise of jurisdiction over Ms. Peart's federal-law claims is clear. Counts I and II allege violations of two federal statutes: Title VII and 42 U.S.C. § 1981. These claims thus present questions of federal law. The Court accordingly has original jurisdiction with respect to Counts I and II. *See* 28 U.S.C. § 1331.

Counts III, IV, and V, on the other hand, are state-law claims. They nonetheless stem from the same events as the federal-law claims: Ms. Peart's pregnancy, leave from work, and subsequent termination. The Court therefore concludes that Ms. Peart's federal and state

counts arise from one "common nucleus of operative fact." As such, her state-law claims are part of the same "case or controversy" under Article III. 28 U.S.C. § 1367(a). Because the facts underlying Ms. Peart's federal-law and state-law claims substantially overlap, the Court concludes that judicial economy, comity, convenience, and fairness weigh in favor of hearing both sets of claims in the same proceeding. Finally, the Court holds that Ms. Peart's claims of breach of an implied contract, wrongful termination, intentional infliction of emotional distress, and violation of DCHRA are not novel or complex issues of state law that lie beyond the ken of this Court. *Id.* § 1367(c). The Court thus elects to retain its supplemental jurisdiction over Ms. Peart's state-law claims. It will apply the law of the District of Columbia to these counts.

### B. Requests for Judicial Notice

Turning to the Latham's and Ms. Peart's requests for judicial notice, the Court will grant the former and deny the latter. Latham asks the Court to take judicial notice of four documents: OHR's letters dated March 18, 2011, September 6, 2011, and March 29, 2012, regarding Ms. Peart's discrimination claims; and EEOC's Right to Sue letter dated April 18, 2013. *See* Def.'s Mot. Judicial Notice, Exs. 1-4. Mrs. Peart does not oppose this request. She instead asks the Court to take judicial notice of the affidavit of Marquita Chambers, a legal secretary at Latham from June to October 2007, which provides Ms. Chambers's impression of Ms. Peart's work ethic, pregnancy complications, and termination. *See* Opp'n, Ex. 6 (Chambers Aff.) [16-1].

In deciding a motion to dismiss pursuant to FRCP 12(b)(1) and (b)(6), a court may take judicial notice of public records from other proceedings, *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *Settles v. U.S. Parole Commission*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Covad Communications Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222

(D.C. Cir. 2005); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), so long as the matters to be noticed are relevant, *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011). Here, the Court finds it appropriate to take judicial notice of the facts contained in the OHR and EEOC letters as they "can be accurately and readily determined" from a public agency proceeding, the accuracy of which "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court conversely deems it inappropriate to take judicial notice of Ms. Chamber's affidavit. The accuracy of Ms. Chambers's affidavit, which is riddled with hearsay, cannot be readily determined and is subject to questioning since it reflects an individual's personal opinions. Moreover, the topics on which Ms. Chambers opines are superfluous to the issues pertinent to the instant motion to dismiss. Latham contends that Ms. Peart's Amended Complaint must be dismissed for want of subject matter jurisdiction and a lapse of the applicable statutes of limitations. Whether Ms. Chambers perceived Ms. Peart to be dedicated to her job, understood Ms. Peart's pregnancy to have been difficult, or thought Ms. Peart's termination was "shock[ing]," Chambers Aff. ¶¶ 4-6, is irrelevant to the proceeding at this juncture.

### C. Federal-Law Claims

The federal-law claims asserted in the Amended Complaint are limited to two counts. Count I asserts a violation of Title VII, as amended by the Pregnancy Discrimination Act, and Count II asserts a violation of 42 U.S.C. § 1981. For the reasons below, the Court will dismiss in part Count I without prejudice and dismiss Count II with prejudice.

### 1. Count I: Title VII Claim

As for Count I, Ms. Peart's Title VII allegations, the Court will partially grant Latham's Motion to Dismiss. Count I reads in relevant part:

> Defendant, by and through its employees, conspired to deny Plaintiff Peart of her employment rights, as guaranteed by the

> [Pregnancy Discrimination Act] and Title VII, by creating a hostile work environment, treating her disparately and discriminating against her in her employment on the basis of her pregnancy and gender. Plaintiff Peart was subjected to said employment conditions based solely on her pregnancy discrimination [sic] and gender—and was subjected to said conditions when those in non-protected categories were treated differently and favorably in their employment.

Am. Compl. ¶ 16. Latham's dismissal motion addresses Count I inasmuch as Ms. Peart asserts a violation of Title VII based on a hostile work environment. Latham contends that the hostile work environment allegation must be dismissed for failure to establish a sufficient basis for relief. The Court agrees.

Congress enacted the Pregnancy Discrimination Act in 1978. That Act amended Title VII to prohibit an employer from discriminating "on the basis of pregnancy, childbirth, or related medical conditions," 42 U.S.C. § 2000e(k), in hiring or firing; compensation; terms, conditions, or privileges of employment; or otherwise limiting, segregating, or classifying employees in a way that would adversely affect their status as employees, 42 U.S.C. § 2000e-2(a). The Supreme Court has determined that the "terms, conditions, or privileges of employment" language "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citation omitted). Therefore, Title VII is violated when a plaintiff demonstrates that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,'" *id.* at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)), and the behavior is "'sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment,'" *id.* (quoting *Meritor*, 477 U.S. at 67). To establish a prima facie hostile work environment claim, a plaintiff must

demonstrate that (1) she is a member of a protected class, (2) she was subject to unwelcome harassment, (3) the harassment occurred because of her membership in the protected class, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment, and failed to act to prevent it. *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (citing *Jones v. Billington*, 12 F. Supp. 2d 1, 11 (D.D.C. 1997)).

In determining whether a claim of a hostile work environment claim is substantiated, a court looks at all the circumstances of the plaintiff's employment, focusing on such factors as the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating or was merely offensive; and whether it unreasonably interfered with the employee's work performance. *Harris*, 510 U.S. at 23. The conduct must be sufficiently extreme to constitute a change in the conditions of employment, so that Title VII does not devolve into a "'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Consequently, "'mere utterance of an epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 67). Further, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 778 (quoting *Oncale*, 523 U.S. at 82).

For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C. Circuit affirmed summary judgment in favor of the defendant, finding that telling the plaintiff to "go back [to] where she came from" on three occasions over a two-month period, separate acts

of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated incidents that did not rise to the level of severity necessary to find a hostile work environment, *id.* at 408, 416-17. Similarly, in *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48 (D.D.C. 2004), this Court entered summary judgment in favor of the defendant because the plaintiff's allegations that her employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in another instance, and was "constantly hostile and hypercritical" did not amount to a hostile work environment, even though these actions may have been disrespectful and unfair, *id.* at 54-57.

A hostile work environment claim need not rest solely on incidents that occurred while the plaintiff was physically at the workplace. *Greer v. Paulson*, 505 F.3d 1306, 1314 (D.C. Cir. 2007) (joining five other circuits in "rejecting a *per se* rule against considering incidents alleged to have occurred while an employee was physically absent from the workplace"). Nonetheless, a plaintiff must demonstrate that her employer's alleged acts were work-related and collectively gave rise to a hostile environment. "Discrete acts constituting discrimination or retaliation claims, therefore, are different in kind from a hostile work environment claim that must be based on severe or pervasive discriminatory intimidation or insult." *Lester*, 290 F. Supp. 2d at 33 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002)). Simply stated, "[w]orkplace conduct is not measured in isolation . . . ." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (*per curiam*).

Although a plaintiff is "not required to plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must be able to support such a claim." *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 42 (D.D.C. 2005) (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000)). Ms. Peart's harassment claim fails this metric. Her hostile

workplace claim is comprised of two incidents. She alleges that Christopher Carr, Latham's manager of human resources, informed her by phone that she was fired from the firm because "she was no longer needed," and added that "her pregnancy complications were not his problem." Am. Compl. ¶ 10. Ms. Peart also claims that Mr. Carr told other Latham personnel that she was terminated because of her "damn thirteen weeks [of] morning sickness" and that her pregnancy was "not [the firm's] concern." *Id.* ¶ 11. Presuming these allegations to be true, as the Court must at this stage in the proceedings, they are insufficiently pervasive or severe to constitute a hostile work environment, as pled in the Amended Complaint. They were isolated, occurring only twice. Moreover, they were not sufficiently extreme so as to support a finding that the comments would have interfered with Ms. Peart's ability to return to work or unreasonably affected her work performance once she returned. Accordingly, the Court will dismiss without prejudice Ms. Peart's hostile work environment claim under Title VII.

The Court will not dismiss Count I outright, however. Although obscured by maladroit pleading, Count I appears to be broader than just a hostile work environment claim under Title VII. A fair reading of Count I demonstrates that Ms. Peart also has pled gender and pregnancy discrimination and disparate treatment. Neither party, however, acknowledges this point. Latham construes Count I as "limited to a single claim" of hostile work environment, Mot. to Dismiss at 16, and Ms. Peart's counsel does not correct this reading. Nonetheless, the Court finds that, under the precepts of *Twombly* and *Iqbal*, Ms. Peart has stated sufficient facts to make out at least a discrimination claim. The Complaint provides Latham with fair notice. Further, the facts alleged raise Ms. Peart's right to relief above a speculative level, *Twombly*, 550 U.S. at 555, such that Count I has facial plausibility, *Iqbal*, 556 U.S. at 678. Count I therefore

survives Latham's Motion to Dismiss inasmuch as it asserts discrimination and disparate treatment in violation of Title VII.

### 2. Count II: 42 U.S.C. § 1981

With respect to Count II, Ms. Peart accuses Latham of violating 42 U.S.C. § 1981 "by creating a hostile work environment and discriminating against [her] both on the basis of her pregnancy and gender." Am. Compl. ¶ 18. Latham contends that Count II must be dismissed for failure to state a claim because § 1981 is inapplicable to the discrimination claims that Ms. Peart's alleges. The Court agrees.

Section 1981 does not provide a cause of action for pregnancy or gender discrimination. The statute reads, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property *as is enjoyed by white citizens,* and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (emphasis added). As is clear from the statute's language, § 1981 is limited to racial discrimination. *See Runyon v. McCrary*, 427 U.S. 160, 167 (1976) (stating that 42 U.S.C. § 1981 only prohibits racial discrimination and not sex or religious discrimination); *Bello v. Howard Univ.*, 898 F. Supp. 2d 213, 219 (D.D.C. 2012) (explaining that "42 U.S.C. § 1981 is narrowly addressed to racial discrimination and is 'in no way' directed to sex or gender discrimination." (quoting *Runyon*, 427 U.S. at 167)).

Ms. Peart tries to save Count II by arguing that her Amended Complaint "states, explicitly, that . . . [42 U.S.C. § 1981] was violated because of 'civil rights' violations" and "retaliation." Opp'n at 4. Her argument is unavailing. First, other than a reference to the Civil

Rights Act of 1964, Count II of her Amended Complaint does not contain the words "civil rights" or "retaliation," much less the factual allegations necessary to support a claim of racial discrimination that would "give a defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted). Second, Ms. Peart cannot correct such a fundamental defect through her Opposition. *See Klein v. Am. Land Title Ass'n*, 926 F. Supp. 2d 193, 200-01 (D.D.C. 2013) (rejecting plaintiff's attempt to "rais[e] new theories of liability in his opposition briefs, none of which [was] fairly stated in [his] amended complaint," because "'it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007)).

Ordinarily, the Court would dismiss an improperly pleaded complaint without prejudice to permit a plaintiff an opportunity to re-file. The Court will not do so as to Count II, however, because the statute of limitations has expired for Ms. Peart's § 1981 claim, even if properly pled. Section 1981 suits are subject to a three- or four-year limitations period depending on the nature of the claim. *See Graves v. District of Columbia*, 777 F. Supp. 2d 109, 115-16 (D.D.C. 2011) (providing a brief overview of the two limitations periods associated with § 1981 claims). This Court need not determine which period applies because Ms. Peart's § 1981 claim is time-barred under both. She was terminated on January 24, 2008, but waited more than five years to file suit against Latham on April 22, 2013.

Ms. Peart does not contest that the statute of limitations for her § 1981 claim began to run January 24, 2008. She instead advances equitable tolling and equitable estoppel arguments. Without citation to any case law, she claims that:

when pursuing one of several *legal remedies*, the statute of limitations on the remedies not being pursued will be equitably tolled if the plaintiff can show:

- Timely notice to the adverse party is given within applicable statute of limitations of filing first claim—and the Defendant resists those efforts to the detriment of Plaintiff filing a lawsuit;
- Lack of prejudice to the defendant;
- Reasonable good faith conduct on part of the plaintiff.

Opp'n at 4 (emphasis in original). Ms. Peart claims that her "attempts to be re-employed equitably tolled all statutes of limitations," and the clock on these limitations periods "arguably" did not begin to run until she received EEOC's Right to Sue letter. *Id.* Ms. Peart adds that Latham is equitably estopped from asserting untimeliness because it "resisted" the discrimination claim she filed with EEOC and "intentionally dragged the administrative procedures out to let the clock keep ticking . . . ." *Id.* at 5.

Ms. Peart misapprehends the law of equitable tolling and equitable estoppel. First, her pursuit of administrative action did not toll her § 1981 claim. "[B]ecause a Section 1981 claim is 'separate from and independent of' Title VII, the statute of limitations on a Section 1981 . . . claim is not tolled by the pendency of administrative action on a Title VII claim." *Carter v. District of Columbia*, 14 F. Supp. 2d 97, 102 (D.D.C. 1998); *see also Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465-66 (1975) (civil rights complainants with pending EEOC charges should file their § 1981 claims in court and request a stay until the charges are resolved); *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 182 (D.D.C. 2010) ("A limitations period does not toll when a plaintiff is not required but chooses to exhaust his administrative remedies before pursuing a claim in court.").

Second, there is no basis for finding that Ms. Peart's § 1981 claim should have been tolled as a general matter of equity. "Federal courts have typically extended equitable relief

only sparingly" in litigation between private parties. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). A party seeking equitable relief from a statute of limitations has a "high" hurdle to clear. *Smith–Haynie*, 155 F.3d at 579. Equitable tolling generally requires a showing that the plaintiff, "despite all due diligence[,] . . . [was] unable to obtain vital information bearing on the existence of [her] claim." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998); *accord Norman v. United States*, 467 F.3d 773, 776-77 (D.C. Cir. 2006) (placing onus on plaintiffs to make "reasonable efforts" to learn availability of causes of action). Conversely, equitable estoppel affords relief from a limitations period where the defendant "has taken active steps to prevent the plaintiff from litigating in time." *Currier*, 159 F.3d at 1367.

Ms. Peart pins her inaction on her prior *pro se* status and unemployment, Latham's decision to challenge rather than settle her administrative claims, and delays in OHR proceedings supposedly attributable to Latham by virtue of its status as a large law firm. Opp'n at 5. Ms. Peart's lack of legal representation or a job is not grounds for tolling. *See Ferguson v. Local 689, Amalgamated Transit Union*, 626 F. Supp. 2d 55, 61 n.2 (D.D.C. 2009) ("Although it is true that courts liberally construe *pro se* filings, a case in which a plaintiff fails to meet a statutory deadline but attributes it to her *pro se* status is not one in which a court should toll the statute of limitations." (internal citation omitted)). Likewise, there is no basis in law or reason for applying either equity doctrine to this matter merely because Latham mounted a defense before OHR or because the agency proceedings were slow. *See Irwin*, 498 U.S. at 96 (recognizing appropriateness of tolling "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"); *Hunt v. Georgia Dep't of Cmty. Affairs*, 490 F. App'x 196, 198 (11th Cir. 2012) (rejecting "slow administrative proceedings" as a basis for equitably tolling a statute of limitations).

In short, Ms. Peart has not articulated any action on her part that demonstrates a diligent pursuit of the § 1981 claim, nor has she identified any act by Latham that prevented, or somehow induced, her into not filing the § 1981 claim before the limitations period expired. Ms. Peart could have filed the § 1981 claim at any time, but chose to await the completion of OHR's multi-year investigation of her Title VII claim. Applying the "sparingly" invoked equitable tolling and equitable estoppel doctrines to these facts is unwarranted. *Irwin*, 498 U.S. at 96. Count II thus is time-barred and will be dismissed with prejudice.

## B. State-Law Claims

The Amended Complaint also asserts three-state law claims. Counts III and IV assert common law causes of action. Ms. Peart claims that Latham breached an implied contract and wrongfully discharged her (Count III), and intentionally inflicted emotional distress (Count IV). Count V asserts a violation of DCHRA. The Court will dismiss the common law claims with prejudice. The DCHRA claim will remain.

### 1. Counts III and IV: Common Law Claims

It is clear from the face of the Amended Complaint that Ms. Peart's claims for breach of an implied contract, wrongful termination, and intentional infliction of emotional distress are time-barred. The D.C. Code states that statutes of limitations for local causes of action begin to run "from the time the right to maintain the action accrues." D.C. Code § 12–301. Although the D.C. Code does not define "accrues," the D.C. Court of Appeals has instructed that "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (*en banc*). "If the existence of an injury is not readily apparent, however, the claim does not accrue until the plaintiff, exercising due

diligence, has 'discovered or reasonably should have discovered all of the essential elements of her possible cause of action, *i.e.*, duty, breach, causation and damages.'" *Farris v. Compton*, 652 A.2d 49, 54 (D.C. 1994) (quoting *Colbert*, 641 A.2d at 473).

Despite Ms. Peart's protestations to the contrary, her claimed injuries were readily apparent no later than the day she was fired, January 24, 2008. From that date, she had three years to complain of breach of an implied contract or wrongful discharge, *see Walker v. Pharm. Research & Mfrs. of Am.*, 439 F. Supp. 2d 103, 108 (D.D.C. 2006) (citing D.C. Code § 12-301(8), the catch-all provision providing three-years for "a limitation . . . not otherwise specially prescribed"); D.C. Code § 12-301(7) (three-year limitations period for implied contracts), and, at best four years to file a claim for intentional infliction of emotional distress.[1] In waiting until April 22, 2013 to file suit, more than five years after her termination, Ms. Peart brought her implied contract, wrongful discharge, and intentional infliction of emotional distress claims too late.

Ms. Peart's attempt to evade the statutes of limitations through equitable tolling and equitable estoppel are as unavailing here as in the context of her untimely 42 U.S.C. § 1981 claim. "'Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.'" *Novak v. Capital Mgmt. & Dev. Corp.*, 452

---

[1] The three-year limitations period of D.C. Code § 12-301(8) also applies to intentional infliction of emotional distress claims, *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997), unless the intentional infliction of emotional distress claim is "intertwined with any of the causes of action for which a period of limitation is specifically provided," *id.* (internal quotation marks and citations omitted). In such instances, the intentional infliction of emotional distress claim adopts the specifically prescribed limitations period. *Id.* Although the case law is silent as to how this principle operates where, as here, there are multiple intertwined causes of action with statutes of limitation of varying lengths, the Court can assume without deciding that the applicable limitations period for Ms. Peart's intentional infliction of emotional distress is the four-year period sometimes associated with 42 U.S.C. § 1981 claims—the longest statute of limitations among her claims.

F.3d 902, 907 (D.C. Cir. 2006) (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). This principle extends to the District of Columbia. *Id.* Because D.C. law controls, *accord Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1086-87 (D.C. Cir. 2007), there is no equity end-run around D.C.'s statutes of limitations. "District of Columbia law does not recognize an equitable tolling exception to the statute of limitations," *Johnson v. Marcheta Investors Ltd. P'ship*, 711 A.2d 109, 112 (D.C. 1998) (citing *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996)), and equitable estoppel is limited to those circumstances in which the defendant takes an affirmative step "that would tend to lull the plaintiff into inaction, . . . thereby permit[ting] the limitation [period] . . . to run," *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 157 (D.C. 1998) (internal quotations and citation omitted).

Ms. Peart asserts the same argument for equitable estoppel here as she does for her 42 U.S.C. § 1981 claim, and the outcome is no different. The only act of Latham's that Ms. Peart cites as a basis for equitable estoppel is Latham's defense of itself in the OHR proceedings. This action, however, does not amount to any inducement to Ms. Peart to delay bringing her common law claims. *Jones v. Gov't Emps. Ins. Co.*, 621 A.2d 845, 847 (D.C. 1993) ("[I]n order to show a 'lulling,' concrete evidence must be presented that clearly establishes that such activity occurred."). Latham was entitled to defend itself. Ms. Peart's bald assertion that "one can reasonably conclude" from Latham's status as a large law firm that the purpose of its defense was to run out the limitations periods is neither reasonable nor a conclusion. Opp'n at 5. It is an unsupported insinuation of misconduct. Counts III and IV are time-barred and dismissed with prejudice.[2]

---

[2] Consequently, the Court does not reach Latham's arguments that Ms. Peart's intentional infliction of emotional distress claim is without an adequate *prima facie* showing and is preempted by the D.C. Workers' Compensation Act, D.C. Code §§ 32-1501 *et seq.*, or that Ms.

### 2.  Count V: D.C. Human Rights Act Claim

The Court at this time cannot determine whether it has subject matter jurisdiction over Ms. Peart's DCHRA claim.  DCHRA contains an election of remedies provision, which states in relevant part that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint" with OHR.  D.C. Code § 2-1403.16(a).  The D.C. Court of Appeals has explained that this provision makes the jurisdiction of the courts and OHR "mutually exclusive in the first instance. . . . [W]here one opts to file with [the] OHR, he or she generally may not also file a complaint in court."  *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C. 1981).  Under the statute, plaintiffs who pursue an administrative adjudication of their DCHRA claim may regain the ability to pursue such a suit in court only "if (1) OHR dismisses the complaint for 'administrative convenience' or (2) the complainant withdraws her OHR complaint before OHR has decided it."  *Carter v. District of Columbia*, 980 A.2d 1217, 1223 (D.C. 2009) (citing D.C. Code § 2-1403.16(a)).

Latham argues that this Court is without subject matter jurisdiction to consider Ms. Peart's DCHRA claim because it has been litigated to conclusion before OHR.  Latham notes that OHR issued a finding of "no probable cause" on March 18, 2011, and affirmed this decision in a letter dated March 29, 2012, which explicitly deemed its determination as "final." According to Latham, there is no indication in the record that Ms. Peart ever withdrew her OHR charge or that OHR dismissed her charge for administrative convenience.

Ms. Peart agrees with Latham that D.C. Code § 2-1403.16(a) requires plaintiffs choose a forum for litigating their discrimination claims.  She instead argues that one of two

---

Peart failed to establish that her employment at Latham was anything other than at-will for purposes of her breach of an implied contract and wrongful discharge claims.

exceptions applies. Ms. Peart maintains that she "was not required to withdraw her DCHRA claims after OHR reversed its decision of no probable cause; she had a choice: mediate or file a lawsuit. She has chosen the latter. This Court has subject matter jurisdiction; clearly, as there was no final determination of her DCHRA claims . . . ." Opp'n at 6. Seemingly oblivious to OHR's March 29, 2012 letter, Ms. Peart accuses Latham of "mis-represent[ing] the decisions of the DCOHR to this Court," and stresses that "there was *no* final decision reached as to [her] claims because there was a reversal of the 'no probable cause' finding." *Id.* at 3. Ms. Peart does not address why OHR's March 29, 2012 affirmation of its probable cause determination would not render her administrative charge fully litigated.

In making these arguments, however, both parties overlook an important antecedent question. Ms. Peart did not file a charge with OHR. Instead, she filed her charge with EEOC, which administratively transferred it to OHR under the agencies' work-sharing agreement. Mar. 18, 2011 Letter at 1 n.1. The unnoticed issue is whether Ms. Peart's EEOC filing constituted a filing with OHR within the meaning of D.C. Code § 2-1403.16(a). An answer in the affirmative would mean that this Court is without subject matter jurisdiction over Count V.

The D.C. Court of Appeals has avoided addressing this issue on at least two occasions. In *Griffin v. Acacia Life Insurance Co.*, 925 A.2d 564 (D.C. 2007), an employee filed a charge with EEOC which cross-filed it with OHR pursuant to a work-sharing agreement, *id.* at 567-69. EEOC dismissed the charge because "it would 'not be able to prove'" the allegations of discrimination, *id.* at 567, and sent the plaintiff a right-to-sue letter, *id.* After a series of proceedings in federal court, the Title VII claims were dismissed and the court declined to exercise supplemental jurisdiction over the DCHRA claims. The plaintiff then brought a

DCHRA lawsuit in the Superior Court for the District of Columbia. *Id.* at 571. The Superior Court dismissed the plaintiff's DCHRA retaliation claim, ruling that because EEOC had cross-filed her claim with OHR, the plaintiff had elected an administrative remedy, and was barred by the doctrine of election of remedies from pursuing her DCHRA claim in court. *Id.* at 572. On appeal, the plaintiff argued that even if she had pursued an administrative remedy, OHR dismissed her charge "for administrative convenience." *Id.* at 573. The D.C. Court of Appeals agreed, deciding it did not have to reach the issue of whether EEOC's automatic cross-filing with OHR constituted the filing of a charge with OHR for purposes of election of remedies because OHR had dismissed the charge on administrative convenience grounds.

Similarly, in *Estenos v. PAHO/WHO Federal Credit Union*, 952 A.2d 878 (D.C. 2008), an employee filed a charge with EEOC, which then cross-filed it with OHR, *id.* at 884. EEOC issued a Right to Sue Letter more than a year later and the plaintiff filed suit in D.C. Superior Court under DCHRA. The defendant moved to dismiss the complaint as time-barred, arguing that DCHRA's one-year statute of limitations is tolled only where a charge is filed directly with OHR. The trial court denied the motion. *Id.* at 884-85. The D.C. Court of Appeals affirmed the trial court's ruling, explaining that the procedural requirements of OHR and EEOC "are to be read broadly and flexibly in the employee's favor in light of their remedial purposes and because they are designed for lay persons." *Id.* at 885-86. The *Estenos* Court determined that whether DCHRA is read broadly or literally, "a plaintiff does not need to file *personally* with OHR to satisfy the statute's tolling requirement." *Id.* at 885. The D.C. Court of Appeals, however, did not address the statute's election of remedies language.

The parties have not presented the Court with any arguments as to how these, or other cases, should apply to the instant matter. Moreover, neither party has provided the Court

with a copy of the work-sharing agreement that was in effect at the time Ms. Peart filed her charge with EEOC. The Court cannot begin to apply the applicable case law without knowing the full extent of the agreement between EEOC and OHR. Because Ms. Peart has not made clear the Court's subject matter jurisdiction over her DCHRA count, *Akinseye*, 339 F.3d at 971, Count V remains pending.[3]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Latham's Motion to Dismiss, Dkt. 14, grant Latham's Motion to Take Judicial Notice, Dkt. 15, and deny Ms. Peart's request for judicial notice, Dkt. 16. A memorializing Order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

Date: October 23, 2013

---

[3] Latham also moves to dismiss Count V as time-barred. The Court does not reach this argument at this time. Determining whether Ms. Peart's DCHRA claim is untimely would constitute an exercise of the Court's subject matter jurisdiction, *accord Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) ("[T]ime prescription, however emphatic, 'are not properly typed jurisdictional.'" (quoting *Scarborough v. Principi*, 541 U.S. 401, 414 (2004))), and the Court cannot determine at this time whether it has such jurisdiction over her DCHRA claim.